# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| EITAN OVADIA ELIAHU,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF ISRAEL,<br><br>Defendant. | Case No. 14-cv-01636-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; DENYING PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND INSPECTION OF EVIDENCE**<br><br>[Re:  ECF 18, 47] |

Before the Court is the State of Israel's ("Defendant") motion to dismiss *pro se* plaintiff Eitan Eliahu's ("Plaintiff") complaint for, *inter alia*, lack of subject matter jurisdiction.  Def.'s Mot., ECF 18.  The Court received briefing from both sides and heard oral argument on Defendant's motion on January 22, 2015, after which it deemed the matter submitted.  On January 26, 2015—four days after Defendant's Motion to Dismiss was submitted—Plaintiff filed a Motion for Expedited Discovery and Inspection of Evidence seeking to obtain jurisdictional discovery.  Pl.'s Mot., ECF 47.  Defendant opposes this latter motion.  Def.'s Opp., ECF 51.

For the reasons stated herein, Defendant's Motion to Dismiss is GRANTED and Plaintiff's Motion for Expedited Discovery is DENIED.[1]

## I.  BACKGROUND

### A.  Procedural History

On November 11, 2014, after Defendant filed its Motion to Dismiss, Plaintiff filed a "Cross Motion to Amend Complaint" seeking leave to add additional factual allegations and claims against Defendant.  Pl.'s Mot. to Amend, ECF 33.  Though Defendant opposed Plaintiff's

---

[1] The Court finds Plaintiff's motion appropriate for submission without oral argument and accordingly vacates the May 14, 2015 hearing date on that motion.  Civ. L.R. 7-1(b).

United States District Court
Northern District of California

United States District Court
Northern District of California

request to amend, it alternatively suggested that the Court could apply Defendant's arguments for dismissal to the amended pleading, which did not cure any of the defects identified in Defendant's motion.  Def.'s Opp. to Mot. to Amend, ECF 40.  At the January 22, 2015 hearing, the Court granted from the bench Plaintiff's motion for leave to amend and both parties accepted the Court's decision to apply Defendant's jurisdictional arguments to Plaintiff's amended complaint.  As such, this order refers to Plaintiff's amended Complaint ("FAC") at ECF 33-1 as the operative pleading.

### B.    Facts Alleged

This lawsuit concerns a bitter divorce that spans two continents.  Plaintiff and his ex-wife, Sigalit Vardi Eliahu ("Vardi"), were married in Israel in 1993.  *See* FAC ¶¶ 18, 44.  In 1997, Vardi filed a complaint in Israel seeking custody, child support, and asset distribution, as well as an accounting from Plaintiff's mother, Janet, and sister, Iris.  *See id.* ¶¶ 18-19, 46.  That complaint was closed shortly thereafter due to "reconciliation," and the couple immigrated to the United States two months later.  *Id.* ¶¶ 47-48.

In 2003, Vardi again sued for divorce, this time in the Superior Court for the County of Santa Clara.  *Id.* ¶ 50.  The case proceeded to trial, and the Superior Court entered final judgment in June 2007, finding as part of the division of marital property that "Plaintiff received $746,742.84 as gifts from his family during the marriage, which were used to purchase the family residence" in California.  *Id.* ¶¶ 53-54.  The Superior Court rejected Vardi's contention that she was owed a portion of that sum of money, finding no evidence to support her assertion that the funds were community property.  *Id.* ¶¶ 54-56.

In 2006, before the Superior Court tried the couples' divorce in California, Vardi reinstated her 1997 divorce complaint in Israel against Plaintiff, Janet, and Iris.  *Id.* ¶ 51.  After the Superior Court entered judgment, Vardi did not appeal the California court decision.  Rather, she sought leave to amend her complaint in the Israeli court into a claim for monetary relief, alleging that Janet and Iris had been given funds from the marital property that was never returned.  *Id.* ¶¶ 58-60.  Vardi sought in damages "exactly the sum which the California Court deducted from her share of the California home, i.e. $382,371.42."  *Id.* ¶ 61.

Plaintiff and his mother and sister vigorously contested Vardi's claims in the Israeli court.

2

United States District Court
Northern District of California

On December 3, 2007, the Israeli Family Court "dismissed the action as against Plaintiff, based on res judicata in California" but maintained the claims against Janet and Iris because they had not been parties to the divorce proceedings in California. *Id.* ¶ 62. The case progressed to an appeal reviving Vardi's claim against Plaintiff, consideration of a report prepared by a court-appointed expert accountant, and Janet and Iris's challenge on jurisdictional grounds. *Id.* ¶¶ 63-66. The Israeli Family Court ultimately determined that Janet and Iris had consented to jurisdiction, that Vardi's claims against Plaintiff must be dismissed because of res judicata, and that Janet and Iris were liable to Vardi in the amount of $382,371.42 plus interest since 2006. *Id.* ¶¶ 66-68. Plaintiff, Janet, and Iris appealed the decision to the Tel Aviv District Court, which appeal was denied. Plaintiff alleges that the judge of that court "stated on the record 'we are deliberating who will go after Eitan, the mother or the ex wife,'" which allegedly demonstrates that the court "clearly intended . . . that the property of Plaintiff in California will satisfy the judgment, wither in favor of appellants (Mother and Sister) or in favor of former Wife." *Id.* ¶ 75. In November 2013, the Israeli High Court of Justice denied leave to further appeal the decision of the Family Court. *Id.*

To satisfy the judgment, Vardi "docketed the Judgment with Israel Post Judgment Debt Collection Authority." *Id.* ¶ 76. The Debt Collection Authority "conducted proceedings to seize the homes of Janet and Iris so as to pay Vardi." *Id.* ¶ 20. In such proceedings, the Debt Collection Authority sells the home through an appointed receiver and uses the proceeds to satisfy the judgment owed. *Id.* ¶¶ 20, 30. In order to prevent his mother and sister's home from being sold, Plaintiff satisfied the judgment by selling his home in California and paying the Debt Collection Authority in full in April 2014. *Id.* ¶¶ 25, 76. In September 2014, after the inception of this lawsuit, Vardi returned to the Debt Collection Authority and secured an additional or amended judgment. *See id.* ¶¶ 21, 130-33. The precise reason for and amount of this amended judgment is not clear, as Plaintiff alternatively alleges that Vardi successfully obtained recalculation of "currency exchanges at rates favorable to her so as to generate a sum of $57,142," *id.* ¶ 21, and that she successfully applied to have the judgment entered with an earlier effective date so as to collect an additional $69,000, *id.* ¶ 131-32.

Plaintiff alleges that the Israeli courts that adjudicated the dispute between Vardi and

Plaintiff's family members acted in derogation of "international laws, and in particular, international reciprocity and respect of res judicata and collateral estoppel." *Id.* ¶¶ 1, 78-88. Although the "core of this complaint is Defendant's defiance of the international consensus that final judgments must be accorded international res judicata effect," Plaintiff would also have this Court understand that Defendant's alleged misconduct occurred in accord with its "ideology of anti-male radical feminism" and its "unique stubbornness to separate itself from the rest of the nations in the area of family law," whereby the rights of women are always favored over those of men in the family courts. *Id.* ¶¶ 5, 89-104. Based on the foregoing, Plaintiff asserts claims against Defendant for: expropriations by a foreign state; malicious prosecution; abuse of process; trespasses to chattel; constructive trust; and declaratory and injunctive relief.

## II.   REQUESTS FOR JUDICIAL NOTICE

### A.   Defendant's Request for Judicial Notice

Defendant requests that the Court take notice of three documents: a translated copy of the Israeli Supreme Court's final decision concerning the litigation in Israel (Exhibit A); translated excerpts from the Israeli Family Court's judgment referenced in the FAC (Exhibit B); and an April 28, 2014 order of the Santa Clara County Superior Court regarding an "Order to Show Cause" that Plaintiff filed in the divorce case between he and Vardi (Exhibit C). Def.'s Request for Judicial Notice ("RJN"), ECF 21. Plaintiff opposes judicial notice of these documents on the ground that they are not properly authenticated by declarants with personal knowledge. Plaintiff moreover contends that Exhibits A and B do not present a complete picture of the Israeli proceedings, and that Exhibit C is a court order that is presently on appeal and therefore not controlling in this case. Pl.'s Opp. 23-25.

When considering a motion to dismiss for lack of subject matter jurisdiction (as the Court is doing here), a court is not restricted to the face of the pleadings. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In fact, when the factual basis for a court's subject matter jurisdiction is challenged, there are few procedural limitations, and the court may consider conflicting evidence, affidavits, and documents, and even hold a limited evidentiary hearing. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594

United States District Court
Northern District of California

F.2d 730, 733 (9th Cir. 1979).  The Court need not go so far here, as Exhibits A and B are court orders incorporated by reference into the operative pleading.  *See* FAC ¶¶ 62-68, 75.  Moreover, all three exhibits are matters of public record that may be judicially noticed.  *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998).  As such, they may be considered even if the Court looks only at the face of the pleadings.

Plaintiff's objections are overruled because they go to the evidentiary weight that the Court should accord to these documents, not whether they are judicially noticeable.  The Court notes that judicially noticeable documents will not be used "so as to supply, without formal introduction of evidence, facts essential to support a contention" in the present case.  *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983).  With that proviso, Defendant's RJN is GRANTED in its entirety, and the documents will be considered to the extent they are relevant to the Court's analysis.

**B.  Plaintiff's Request for Judicial Notice**

After the January 22, 2015 hearing on Defendant's Motion to Dismiss, Plaintiff filed two requests for judicial notice in support of his opposition to dismissal.  *See* Pl.'s First RJN, ECF 49; Pl.'s Second RJN, ECF 50.  In the first RJN, Plaintiff asks that the Court take notice of the "Expert Declaration of Tali Rosen, ESQ," an attorney member of the Israeli and New York state bars.  Pl.'s First RJN at 1.  This request is DENIED, as the opinion of a legal expert is hardly an adjudicative fact that is "not subject to reasonable dispute."  Fed. R. Evid. 201.  Plaintiff's second RJN concerns a default judgment entered in an unrelated family court proceeding in New Jersey.  This judgment is a matter of public record and appropriate for judicial notice, though the Court will not consider it "so as to supply, without formal introduction of evidence, facts essential to support a contention" in the present case.  *M/V Am. Queen*, 708 F.2d at 1491.  As such, Plaintiff's Second RJN is GRANTED, and the Court will consider the judicially noticeable document to the extent it is relevant to the Court's analysis.

**III.  DISCUSSION**

Defendant urges that the FAC should be dismissed because (1) Defendant is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330, *et seq.*; (2) Plaintiff

lacks standing to pursue his claims because his alleged injuries are self-inflicted; (3) Plaintiff fails to state a claim; (4) this district is not the proper venue for Plaintiff's claims; and (5) foreign policy abstention doctrines bar this suit.  *See generally* Def.'s Mot.  The Court need only address Defendant's sovereign immunity and standing arguments, as they prove dispositive.

### A.    Defendant is Immune from Suit Under the FSIA.

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  In the absence of subject matter jurisdiction, federal courts have no power to consider claims and must dismiss the case.  *See* Fed. R. Civ. P. 12(h)(3).

"The FSIA is the sole basis of subject matter jurisdiction over suits involving foreign states and their agencies and instrumentalities."  *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 304 (9th Cir. 1997); *see also Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007); 28 U.S.C. § 1603(a).  "Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies."  *Permanent Mission of India*, 551 U.S. at 197; *see also Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1022 (2010) (en banc).  That immunity is "not only immunity from liability, but immunity from suit."  *Phaneuf*, 106 F.3d at 305.  A court must accordingly address the merits of immunity (and subject matter jurisdiction) under the FSIA early in the litigation "in order to preserve the immunity that may be determined to exist."  *In re Republic of Philippines*, 309 F.3d 1143, 1149 (9th Cir. 2002).

Because it is undisputed that Defendant—the State of Israel—is a foreign state within the meaning of the FSIA, Plaintiff has the "burden of going forward with the evidence by offering proof that one of the FSIA exemptions applies."  *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 708 n.9 (9th Cir. 1992) (citation and quotation omitted); *see also Phaneuf*, 106 F.3d at 307.  Only once Plaintiff has presented such evidence does the burden shift to Defendant to prove by a preponderance of the evidence that the exception to sovereign immunity does not apply. *Siderman*, 965 F.2d at 708 n.9; *Joseph v. Office of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1021 (9th Cir. 1987).

United States District Court
Northern District of California

In the present case, Plaintiff invokes three of the narrowly circumscribed statutory exceptions to immunity under the FSIA: the "expropriation" exception in § 1605(a)(3), the "successor" exception in § 1605(a)(4), and the "noncommercial tort" exception in § 1605(a)(5). FAC ¶ 26.  Defendant argues that Plaintiff has failed to demonstrate that any of these exceptions applies to Defendant's alleged misconduct.  Def.'s Mot. 6-11.  The Court agrees.

### i.   The expropriation exception does not apply.

The expropriation—or, "international takings"—exception of the FSIA provides that a foreign state is not immune from suit in an action:

> in which rights in property taken in violation of international law are in issue and [1] that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or [2] that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3).  A plaintiff asserting jurisdiction under this exception must establish (1) that the defendant effected a taking of the plaintiff's property in violation of international law, and (2) either of the commercial activity nexuses set forth in the statute.  *See Cassirer*, 616 F.3d at 1027; *Siderman*, 965 F.2d at 711-13.[2]  At the jurisdictional stage, the Court "need not decide whether the taking actually violated international law" so long as the claim is "substantial and non-frivolous."  *Siderman*, 965 F.2d at 711 (quoting *West v. Multibanco Comermex, S.A.*, 807 F.2d 820, 826 (9th Cir. 1987)).  As to the commercial activity nexus, however, the plaintiff bears an initial burden of production to demonstrate that the defendant engages in the requisite commercial activity in the United States before the burden shifts to the defendant to establish the absence of such facts.  *See Agudas Chasidei Chabad of U.S. v. Russian Federation*, 528 F.3d 934,

---

[2] Courts have further broken this test down into three or four elements, though the only difference is how one parses the statutory text.  *See Agudas Chasidei Chabad of U.S. v. Russian Federation*, 528 F.3d 934, 941-42 (D.C. Cir. 2008) (analyzing three elements of "rights in property," "taken in violation of international law," and "commercial activity"); *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) ("in order to establish jurisdiction pursuant to the FSIA expropriation exception, a plaintiff must show that: (1) rights in property are in issue; (2) that the property was "taken"; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied").

940-41 (D.C. Cir. 2008) ("The alternative 'commercial activity' requirements are purely factual predicates independent of the plaintiff's claim, and must . . . be resolved in the plaintiff's favor before the suit can proceed.").

Plaintiff fails to allege a substantial or non-frivolous claim that Defendant has taken Plaintiff's property in violation of the international law of expropriation.  The term "taken" in § 1605(a)(3) "refers to acts of a sovereign, not a private enterprise, that deprive a *plaintiff* of property without adequate compensation." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) (emphasis added) (examining legislative history of the FSIA). "[A] taking offends international law when it does not serve a public purpose, when it discriminates against those who are not nationals of the country, or when it is not accomplished with payment of just compensation." *Cassirer*, 616 F.3d at 1027.  Although Plaintiff attempts to conform his allegations these principles, *see* FAC ¶¶ 116-19, he fails to allege that Defendant took *his* property.  Rather, Plaintiff alleges that Defendant "took" his property "by holding hostage the properties of Mother and Sister," which was allegedly "intended to work like domino cards" to effect a taking of Plaintiff's property.  *Id.* ¶¶ 116, 119.  Yet Plaintiff acknowledges that the Israeli court dismissed the lawsuit against him and that he voluntarily sold his home in California to satisfy the judgment against Janet and Iris in Israel.[3]  *See* FAC ¶¶ 25, 30, 62, 67.  In the face of the fact that the Israeli court never entered a judgment against him, Plaintiff accords undue significance to the statement of a Tel Aviv District Court judge suggesting that either Vardi or Plaintiff's mother might "go after" Plaintiff following the Israeli judgment, arguing that this demonstrates Defendant's *intent* to take *his* property.  *See* FAC ¶ 75; Pl.'s Opp. 7, 25.  This statement, however, in no way suggests that *the State of Israel* (as opposed to Vardi) claimed ownership over Plaintiff's property.  *See Cassirer*, 616 F.3d at 1031.  In short, there are simply no facts alleged that would warrant a finding that the offhand remark by a judicial officer in adjudicating a dispute between private parties amounted to a sovereign state's taking of a third

---

[3] While the Court understands that Plaintiff may disagree with the characterization of his actions as "voluntary," it is undisputed that the Israeli courts did not order Plaintiff to take any action with respect to the judgment against Janet and Iris.

United States District Court
Northern District of California

United States District Court
Northern District of California

party's property in violation of the law of expropriation.[4]

Nor has Plaintiff made out a substantial or non-frivolous claim that the rulings of the Israeli courts violated some other international law or custom. The gravamen of Plaintiff's complaint is that the Israeli court did not respect res judicata. *See* FAC ¶ 89 ("Plaintiff alleges that the core of this complaint is Defendant's defiance of the international consensus that final judgments must be accorded international res judicata effect as between countries that respect each other and judicially cooperate with each other."); *see generally id.* ¶¶ 78-88, 111-120. It is not clear that a failure to abide by res judicata is a taking in violation of international law, and Plaintiff offers no authority in support of this contention.[5] Courts in the United States have acknowledged that the application of res judicata to foreign judgments is not so much a matter of international law or customary international norms as a matter of comity. *See In re Arbitration Between Int'l Bechtel Co., Ltd. & Dep't of Civil Aviation of Gov't of Dubai*, 300 F. Supp. 2d 112, 118 (D.D.C. 2004); *see also Hilton v. Guyot*, 159 U.S. 113 (1895). Thus, this case cannot be compared to those such as *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661 (7th Cir. 2012), wherein the court determined that the taking of property to effectuate genocide was a "taking" in violation of universally recognized customary international law that satisfied the first condition of the FSIA takings exception. *Id.* at 675-77. Furthermore, Plaintiff alleges that the Israeli Family Court's decision with respect to Janet and Iris is contrary to Plaintiff's *interpretation* of the res judicata effect of the Santa Clara Superior Court's divorce decree, not that the Family Court failed to consider res judicata at all. *See* FAC ¶¶ 84-86. Boiled down to its essence, Plaintiff disagrees with how the Israeli Family Court applied res judicata in the case against Janet and Iris. Plaintiff's

---

[4] To the extent Plaintiff contends that Defendant's alleged "ideology of anti-male radical feminism" is the cause of a discriminatory taking, Plaintiff misunderstands the case law defining takings in violation of international law. "[A] taking offends international law . . . when it discriminates against those *who are not nationals of the country*," *Cassirer*, 616 F.3d at 1027 (emphasis added), not when a sovereign discriminates among groups of its own subjects. Plaintiff does not allege that Defendant took his property because he is not a national of the State of Israel.

[5] The contours and viability of the theory of so-called "judicial takings"—where a court decision may be deemed to have effectively taken property rights from an individual—are unclear even in the courts of this country. *See generally Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 702 (2010).

disagreement—rightly or wrongly—with the determination of a foreign court is insufficient basis to sustain a lawsuit against a foreign sovereign in the courts of this country.

As to the commercial activity nexus, Plaintiff's allegations and evidence also fall short. Plaintiff argues that there is "ample nexus" with the United States and that both clauses of the commercial activity requirement are satisfied in this case. *See* Pl.'s Opp. 13-14. However, he alleges no facts establishing either that the expropriated property (or property exchanged for the expropriated property) is in the United States *in connection with* Defendant's commercial activity in this country. Plaintiff argues that "the separate equity of plaintiff in the marital home stood as a trophy which Vardi was after" in the Israeli court proceedings, presumably suggesting that the first clause of the commercial activity requirement is satisfied because Plaintiff believed his home in California was at issue. *Id.* at 13. Even accepting this as true, Plaintiff does not allege any connection between the property in California and Defendant's commercial activity in the United States. Nor is the second clause of the nexus requirement satisfied, despite Plaintiff's argument that "[d]uring the pendency of this action, the liquidated proceeds of the house were sent to the Debt Collection Authority, which is when the second hook kicked in. There is compelling evidence to argue that the property is owned or operated by a defendant who is engaged in a commercial activity in the United States (See relevant pleadings in the complaint)." Pl.'s Opp. 14. The Court has combed through both the FAC and the original complaint and has found no allegations concerning the Debt Collection Authority's supposed commercial activity in the United States. In any event, to the extent the Debt Collection Authority is an "agency or instrumentality" of the State of Israel, Plaintiff has not sued the Debt Collection Authority in this action. The only defendant here is the State of Israel, and Plaintiff has failed to allege—much less satisfy his burden of production to demonstrate—either of the commercial activity nexuses required for this Court to have subject matter jurisdiction over the claims against Defendant in this action.

In sum, Plaintiff's assertion that Defendant took his property in violation of international law when its courts adjudicated rights in a private dispute borders on frivolous. Moreover, Plaintiff has failed to demonstrate any nexus between the allegedly expropriated property and

10

1    Defendant's commercial activity in the United States.  As such, the Court finds that the

2    expropriation exception of the FSIA does not apply in this case.

3                    **ii.  The successor exception does not apply.**

4         The successor exception (or, to use Defendant's terminology, "rights-in-property

5    exception") set forth in § 1605(a)(4) of the FSIA provides that a foreign sovereign is not immune

6    if "rights in property in the United States acquired by succession or gift or rights in immovable

7    property situated in the United States are in issue."  28 U.S.C. § 1605(a)(4).  This exception is

8    limited to circumstances where the foreign state is "party by virtue of its succession to [or is gifted

9    with] a private party's claim or putative liability" and focuses on "whether the *foreign state* has

10   acquired by succession [or gift], not whether any party to the action has acquired a right by

11   succession [or gift]."  *Republic of Philippines*, 309 F.3d at 1151 (emphasis added).

12        It is clear that the "successor" exception to the FSIA does not apply in this case, as

13   Plaintiff's claims do not concern property that was gifted to the State of Israel.  *See* Def.'s Mot. 9-

14   10.  The Court furthermore agrees with Defendant that Plaintiff's argument on this point is non-

15   responsive, as he appears to be arguing the "rights in property" element of the expropriation

16   exception.  *See* Def.'s Reply 4; Pl.'s Opp. 15-16; *id.* at 16 ("Thus, with the expropriation of

17   plaintiff's separate property, the requirement of 'rights in property' is amply satisfied.").  The

18   Court therefore finds that the "successor" exception at § 1605(a)(4) does not apply.

19                   **iii.  The noncommercial tort exception does not apply.**

20        The noncommercial tort exception to the FSIA permits actions:

21            in which money damages are sought against a foreign state for
22            personal injury or death, or damage to or loss of property, occurring
             in the United States and caused by the tortious act or omission of
23            that foreign state or of any official or employee of that foreign state
             while acting within the scope of his office or employment; except
24            this paragraph shall not apply to—

25            (A) any claim based upon the exercise or performance or the failure
             to exercise or perform a discretionary function regardless of whether
26            the discretion be abused, or

27            (B) any claim arising out of malicious prosecution, abuse of process,
             libel, slander, misrepresentation, deceit, or interference with contract
28            rights; or

United States District Court
Northern District of California

United States District Court
Northern District of California

1    28 U.S.C. § 1605(a)(5).  Defendant argues that this exception does not apply because Plaintiff has

2    not alleged a tort committed by Defendant in the United States.  *See* Def.'s Mot. 10-11.  Plaintiff

3    offers no rejoinder to these arguments, acknowledging that he "relied on the expropriation

4    exception mostly."  Pl.'s Opp. 18.

5         Plaintiff does appear to suggest that the addition of tort claims in the FAC addresses some

6    of the deficiencies Defendant identified in its moving papers.  *See id.* ("Plaintiff has asserted in his

7    proposed amended complaint causes of action in negligence, malicious prosecution and abuse of

8    process.").  Defendant adroitly notes in reply that Plaintiff's FAC does not in fact contain a claim

9    for negligence and that § 1605(a)(5) expressly does *not* apply to claims for malicious prosecution

10   and abuse of process.  Def.'s Reply 4-5; *see* 28 U.S.C. § 1605(5)(B).  Moreover, the FAC and

11   Plaintiff's briefing are silent on the charge that the noncommercial tort exception "covers only

12   torts occurring within the territorial jurisdiction of the United States."  *Argentine Republic v.*

13   *Amerada Hess Shipping Corp.*, 488 U.S. 428, 441 (1989).  There are no facts to even suggest that

14   Defendant's allegedly tortious acts were committed in the United States.  As such, the Court finds

15   that the noncommercial tort exception to the FSIA does not apply to the claims in this action.

16           **iv.  Defendant has not impliedly waived its sovereign immunity.**

17        Plaintiff further argues in opposition to dismissal that Defendant implicitly waived its

18   sovereign immunity, and that the waiver exception to the FSIA therefore applies to confer

19   jurisdiction over his case.  Pl.'s Opp. 17; 28 U.S.C. § 1605(a)(1).  The waiver exception "is

20   narrowly construed," and implied waiver is typically only found in three narrowly circumscribed

21   instances, none of which is applicable here.  *See Siderman*, 965 F.2d at 720-21 (legislative history

22   indicates that courts have found implied waivers where (1) "a foreign state has agreed to

23   arbitration in another country"; (2) "a foreign state has agreed that the law of a particular country

24   should govern a contract"; and (3) "a foreign state has filed a responsive pleading in an action

25   without raising the defense of sovereign immunity").

26        Plaintiff's waiver theory is not alleged in the FAC and is difficult to follow.  He appears to

27   be arguing that the waiver occurred when the Israeli courts "knowingly transgress[ed] on the acts

28   of the Judiciary of a USA court" by rendering judgment in the Israeli suit between Vardi and

                                            12

1  Plaintiff's mother and sister.  *See* Pl.'s Opp. 17.  Plaintiff's theory hangs on a remark made by a

2  judge of the Tel Aviv District Court who, on appeal of the final judgment of the Family Court,

3  "stated on the record 'we are deliberating who will go after Eitan, the mother or the ex wife.'"

4  FAC ¶ 75; Pl.'s Opp. 17.  By anticipating that the judgment in Israel could result in either Vardi or

5  Plaintiff's family suing Plaintiff in California, the Israeli court—and, by extension, the State of

6  Israel—somehow "availed" itself of the American court system and made itself amenable to suit in

7  the United States.  *Id.* at 17-18.  There is no support for the assertion that a foreign court

8  anticipating that its ruling could lead to further litigation in the United States somehow waives its

9  sovereign immunity and makes itself amenable to be sued in the United States in a suit that

10  effectively amounts to an extraterritorial appeal of that foreign court's ruling.

11        To the extent Plaintiff bases his theory on the "similar but not same case" of *Siderman*,

12  Pl.'s Opp. 18, that case is easily distinguishable.  The *Siderman* court found evidence indicating

13  that "Argentina apparently not only envisioned United States court participation in its persecution

14  of the [plaintiffs], but by its actions deliberately implicated our courts in that persecution,"

15  including enlisting the aid of American courts to serve the plaintiffs with process.  *Siderman*, 965

16  F.2d at 721-22.  Suffice it to say, Plaintiff's interpretation of a remark made during appellate

17  argument in the Israeli case is insufficient evidence on which to base a finding that Defendant

18  implicitly waived its sovereign immunity in this action.  The Court therefore finds that the waiver

19  exception at § 1605(a)(1) of the FSIA does not apply.

20        Plaintiff has failed to demonstrate that any exception to the FSIA applies in this case.

21  Defendant is therefore immune from suit.  28 U.S.C. § 1604.  The Court accordingly finds that it

22  lacks subject matter jurisdiction to adjudicate this dispute and GRANTS Defendant's Motion to

23  Dismiss on that ground.

24        **B.**    **Plaintiff Lacks Standing to Pursue His Claims Against Defendant.**

25        Although it is clear that the FSIA immunizes the Defendant in this lawsuit, the Court

26  separately concludes that Plaintiff also lacks standing to pursue his claims against Defendant.  *See*

27  Def.'s Mot.  12-13.  To establish Article III standing, a plaintiff must establish injury, causation,

28  and redressability.  *Clapper v. Amnesty Int'l USA*, --- U.S. ---, 133 S. Ct. 1138, 1147 (2013).  The

1    plaintiff's injury must be *caused* by the defendant, "which for Article III purposes requires a

2    showing that his injury is 'fairly traceable to the challenged action of the defendant, and not the

3    result of the independent action of some third party not before the court.'"   *Mendia v. Garcia*, 768

4    F.3d 1009, 1012 (9th Cir. 2014) (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)).   A plaintiff

5    cannot sustain Article III standing based on injuries that are self-inflicted.   *See id.* at 1013 n.1;

6    *Natural Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013), *as*

7    *amended* (Mar. 21, 2013).

8           Though Plaintiff believes his grievance is with Defendant, he alleges no injuries fairly

9    traceable to Defendant's adjudication of a private dispute between Vardi and Plaintiff's mother

10   and sister.   In fact, Plaintiff acknowledges that the Israeli court never entered judgment against

11   him or ordered him to satisfy any judgment against his family members.   Plaintiff chose to satisfy

12   the judgment against his mother and sister by selling his property in the United States.   Plaintiff

13   maintains, however, that the judgment against Janet and Iris was a veiled attempt to take *his*

14   property "'through the back door', by catching his mother and sister as responsible for 'what he

15   did to Vardi.'"   *See* Pl.'s Opp. 21.   This is not a reasonable inference from the facts alleged.   To

16   the extent Plaintiff suffered injury from having to travel to and defend himself in an Israeli court,

17   such injuries are more directly traceable to the actions of his ex-wife than to the Israeli court that

18   adjudicated the dispute between Plaintiff's family and his ex-wife.   Moreover, because the facts

19   alleged in the FAC clearly indicate a lack of standing, the Court rejects Plaintiff's argument that

20   the question of whether his injury was self-inflicted is a factual one.   *Id.*   As the party invoking

21   this Court's jurisdiction, it is Plaintiff's burden to demonstrate Article III standing, *Sierra Club v.*

22   *U.S. E.P.A.*, 762 F.3d 971, 976 (9th Cir. 2014), and his own allegations fail to do so here.

23          Based on the foregoing, Defendant's Motion to Dismiss is likewise GRANTED because

24   Plaintiff lacks Article III standing to pursue his claims.

25   **IV.    PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

26          On January 26, 2015, after the Court took Defendant's Motion to Dismiss under

27   submission, Plaintiff filed a Motion for Expedited Discovery requesting discovery into

28   jurisdictional facts.   Pl.'s Mot. 1-2.   Plaintiff contends that Defendant's argument that Plaintiff

United States District Court
Northern District of California

United States District Court
Northern District of California

voluntarily paid to satisfy the Israeli judgment against Plaintiff's mother and sister is a "false declaration" that "must be verified through a discovery as Defendant bases its immunity claim on this false declaration." *Id.* at 1.  Plaintiff argues that discovery "must be warranted in order for Plaintiff to establish that the cause of action falls in the statutory exceptions of Expropriation and Waiver of the Defendant's claimed immunity" and that it is "also necessary so Plaintiff would be able to prove the violation of an international law in regards to res judicata and collateral estoppel." *Id.*  Defendant opposes this request on the grounds that Plaintiff fails to identify any *specific* discovery that he needs to establish jurisdiction under the FSIA and that any discovery is unwarranted given Plaintiff's deficient pleadings.  Def.'s Opp. 1-3, ECF 51.  The Court agrees with Defendant.

Although "generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue [under the FSIA]," the right to preliminary discovery is not absolute, and courts have recognized the need to treat such requests with circumspection, given the nature of the immunity invoked. *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990); *see also First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 177 (2d Cir. 1998).  Jurisdictional discovery under the FSIA must therefore balance a sovereign's legitimate claim to immunity against the need for discovery into specific exceptions to immunity, where the facts underlying the exceptions are controverted. *See Alperin v. Vatican Bank*, No. C 99-04941 MMC(EDL), 2006 WL 1663847, at *1 (N.D. Cal. June 15, 2006); *see also Siderman*, 965 F.2d at 712-13 ("parties should be allowed to conduct discovery for the limited purpose of establishing jurisdictional facts" if there are any jurisdictional facts in dispute).

As an initial matter, Plaintiff's request for discovery here is untimely.  Despite the deficiencies identified in Defendant's Motion to Dismiss, Plaintiff waited until after oral argument on Defendant's motion to seek discovery in an attempt to rescue his case.  Given his *pro se* status, this fact alone is not enough to warrant summary denial of Plaintiff's request.  However, Plaintiff also makes no showing that jurisdictional discovery is warranted in this case.  As discussed above, Plaintiff has not satisfied his initial burden of even alleging applicable exceptions to the FSIA.  To the extent Plaintiff hangs his jurisdictional hat on the expropriation and waiver exceptions to the

United States District Court
Northern District of California

FSIA, his pleadings, even when taken as true, fail to demonstrate that those exceptions apply. Plaintiff's allegation that Defendant's conduct effected a taking in violation of international borders on frivolous, and his assertion that the State of Israel waived its sovereign immunity is equally implausible.  Moreover, in the guise of jurisdictional discovery, Plaintiff seeks to obtain evidence to prove his case, Pl.'s Mot. 1, which is further reason to reject Plaintiff's request. Plaintiff's Motion for Expedited Discovery is therefore DENIED.

Plaintiff's motion also includes a request for leave to amend his complaint in order to assert additional claims against Defendant.  *See* Pl.'s Mot. 4.  This request is procedurally improper because Plaintiff makes no showing under Federal Rule of Civil Procedure 15 for the propriety of the proposed amendments, nor does he set forth the requested amendments in a proposed amended pleading, as required by Civil Local Rule 10-1.  More fundamentally, the Court has determined that none of the FSIA exceptions apply to confer subject matter jurisdiction over this suit.  Plaintiff's proposed new claims do not cure this jurisdictional defect and permitting further amendment would therefore be an exercise in futility.  Plaintiff's request for leave to amend is accordingly DENIED.

## V.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED for lack of subject matter jurisdiction under the FSIA and lack of Article III standing.  Plaintiff's Motion for Expedited Discovery is DENIED.  The Clerk of the Court shall close the case file.

**IT IS SO ORDERED.**

Dated: March 3, 2015

_____
BETH LABSON FREEMAN
United States District Judge